# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| LORI CHAVEZ-DEREMER, | ) | |
| *Secretary of the United States* | ) | |
| *Department of Labor*, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:21-CV-182 HEA |
| | ) | |
| v. | ) | |
| | ) | |
| LEVERING REGIONAL HEALTH | ) | |
| CARE CENTER, L.L.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court following an order of remand by the United States Court of Appeals for the Eighth Circuit. In an opinion dated March 26, 2025, the Eighth Circuit reversed the entry of summary judgment in favor of Defendants Levering Regional Health Care Center, L.L.C. ("Levering") and Reliant Care Management Company, L.L.C. ("Reliant Care") (collectively "Defendants") and remanded for further proceedings consistent with its opinion.[1]

## I.    Background

The Secretary of the United States Department of Labor brought suit against Defendants for violating the Fair Labor Standards Act, 29 U.S.C. § 201, *et*

---

[1]The Mandate was issued on May 19, 2025.

*seq*.("FLSA").  Levering operates Levering Regional Health Care Center ("Levering Center") a residential care facility, and Reliant Care provides management services to Levering, including payroll and human resources ("HR") services.  Employees at Levering Center deliver direct care to in-patient residents.  These employees include nurses, certified medical technicians, quality-of-life advocates, hall monitors, and residential care coordinators (collectively "Nursing Department Employees").  In the Complaint, Plaintiff alleges Defendants violated the FLSA, because they automatically deducted 30 minutes for meal breaks from Nursing Department Employees' pay when Defendants knew or should have known the employees regularly worked through their meal breaks.

Following discovery in this case, Defendants filed a joint motion for summary judgment.  Defendants argued they were entitled to summary judgment because there was no evidence they had violated the FLSA.  They argued that there was no FLSA violation because there was a policy in place that allowed Nursing Department Employees to request pay for the time that they worked during meal breaks by completing and submitting a Temporary Time Sheet.  Defendants also argued that Plaintiff did not have sufficient evidence to establish the amount of unpaid wages. In the alternative, Defendants argued that even if Plaintiff could establish an FLSA violation, the two-year statute of limitations applied, because Plaintiff could not show that Defendants' violation was willful.  Defendants also raised a defense to

liquidated damages and argued that they acted in good faith and had reasonable grounds to believe that they were acting in accordance with the FLSA

In addition to the joint motion, Reliant Care filed a separate Motion for Summary Judgment. It argued that Plaintiff could not establish that it was a joint employer of Nursing Department Employees at Levering Center and, therefore, it could not be held liable for the alleged FLSA violations.

In an Opinion, Memorandum, and Order dated October 13, 2023, the Court granted Defendants' joint Motion for Summary Judgment. The Court found that the undisputed evidence showed that there was a lawful policy in place whereby Nursing Department Employees could report and be paid for missed meal breaks and, therefore, Defendants had not violated the FLSA. That Court further found that Plaintiff failed to provide adequate evidence that Nursing Department Employees at Levering Center worked more than 40 hours a week. Finding the issue moot, the Court declined to address Defendants' argument that a two-year statute of limitations applied in this case. The Court also did not address Reliant Care's separate Motion for Summary Judgment. The Court entered Judgment in Defendants' favor, and Plaintiff appealed.

In an Opinion dated March 26, 2025, the Eighth Circuit reversed the entry of summary judgment. *Micone v. Levering Reg'l Health Care Ctr., L.LC.*, 132 F.4th 1074 (8th Cir. 2025). The Court of Appeals found that there was evidence, including

from supervisors, that due to staffing shortages and job demands, Nursing Department Employees frequently missed meal breaks or had their meal breaks interrupted, and some employees even claimed that they never took a meal break. *Id.* at 1077.  The Eighth Circuit acknowledged that Defendants had established a policy for employees to report time work during meal breaks, but it found there was evidence that the procedures were not used.  *Id.* at 1080.  The Court of Appeals noted that during a two-year audit period, from February 13, 2018, to February 12, 2020, Defendants failed to produce a single Temporary Time Sheet requesting pay for a missed meal break.  *Id.* at 1080.  Further, the Eighth Circuit found it significant that during a four-month period after the Department of Labor's audit, Defendants produced 883 pages of Temporary Time Sheets requesting pay for missed meal breaks.  The Eighth Circuit also found that there was evidence that employees, including supervisors, were unaware of the missed meal break policy, and there was also evidence that employees and supervisors did not know how to submit paperwork to request pay for a missed meal break.  *Id.* at 1077–78.  Based on the evidence in the record, the Eighth Circuit found "because a reasonable jury could find Levering knew or should have known that none of its employees ever submitted a Temporary Time Sheet to get reimbursed during the audit period despite working through lunch, a reasonable jury could find Levering knew or should have known that it was not paying its employees for time spent working during the automatically

deducted lunch breaks."[2]  *Id.* at 1080 n.3.  The Eighth Circuit reversed the entry of summary judgment and remanded for further proceedings.

Following remand, Defendants requested a hearing before this Court to address their alterative arguments in support of their Joint Motion for Summary Judgment, as well as Reliant Care's separate Motion for Summary Judgment. Defendants brought to the Court's attention that in its Opinion, Memorandum, and Order granting summary judgment, the Court had not decided whether there was evidence of a willful violation or whether Reliant Care could be held liable under the FLSA as a joint employer.  A hearing was held on June 23, 2025, at which both sides presented argument and had the opportunity to be heard.  The Court will now take up Defendants' alternative arguments in their Motoin for Summary Judgment, and Reliant Care's Motion for Summary Judgment

## II.    *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Eighth Circuit Court of Appeals has explained,

---

[2]The Eighth Circuit used the term "Levering" to mean both Levering Regional Health Care Center, L.LC. and Reliant Care Management Company, L.L.C.  *Id.* at 1077.

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)] (quotations omitted). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) (quotations omitted).

*Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047–48 (8th Cir. 2022). To put the "materiality" requirement slightly differently, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson*, 477 U.S. at 249.

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts

6

showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248).  A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943–44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann*

*Bros. Constr. of Richmond, Inc.*, 34 F.4th 649 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

## III.    Facts

For the purpose of deciding whether there is evidence in the record that Defendants willfully violated the FLSA, the Court adopts the facts laid out in its Opinion, Memorandum and Order dated October 13, 2023, and as set forth in the Eighth Circuit's Opinion dated March 26, 2025.

With the above standard in mind, the Court accepts the following facts as true for the purpose of resolving Reliant Care's separate Motion for Summary Judgment:

Reliant Care manages 24 healthcare facilities in Missouri including Levering Center, a residential care facility.[3]  Under a management services agreement, Reliant Care provides Levering with business services for the operation of Levering Center, including legal advice, HR support, compliance, billing, tax, accounting and other financial services.  The management services agreement states that employees working at Levering Center are Levering employees, and that they are to be employed and paid exclusively by Levering.  The management services agreement further provides that Levering shall conduct all daily operations of the facility.

---

[3]Reliant Care is wholly owned by Reliant Care Group, L.L.C., which is its sole member. Reliant Care Group, L.L.C. is also one of the two members of Levering.  Richard J. DeStefane is the president of both Reliant Care and Levering.

Reliant Care recruited the leadership team at Levering, but the only employee at Levering over whom Reliant Care had hiring authority was the Administrator.  On its website, Reliant Care did provide information about job opportunities at Levering Center and other facilities, and there were links to apply, but ultimately, Levering's Administrator, Director of Nursing and HR Manager had the authority to hire and fire Nursing Department Employees at Levering Center.

Levering's Administrator testified that she reported to and was supervised by Reliant Care.  Reliant Care's Executive Vice President and Chief Operating Officer supervised and advised Levering's Administrator on policies, which included wage and hour compliance and the meal break policy.  According to the Administrator, decisions about procedures and policies at Levering were made in conjunction with Reliant Care, which the Administrator referred to as "corporate."

Reliant Care created the missed meal break policy used at Levering Center, and Reliant Care's Human Resources Executive Director was involved in implementing an overtime pay policy and ensuring compliance.  Reliant Care provided FLSA compliance education and training to Levering's HR manager. Since at least February 2018, Reliant Care's HR department has provided a two- to three-day orientation and training for Levering's HR manager, which consisted of going over policies, procedures, and employee benefits.  Reliant Care's HR department also provided the initial training on the missed meal break policy to

Levering's HR manager, and it provided routine follow-up training on this and other policies.  Employees working at Levering Center were directed and instructed to contact the Human Resource Executive Director at Reliant Care if they had any questions or concerns about the missed meal break policy.

Reliant Care also ran a "Compliance Hotline" at Levering Center.  The hotline was monitored by Barbara Barrett, who was a "compliance officer" at Reliant Care. The Compliance Hotline allowed employees to communicate with Reliant Care about workplace and job-related issues, which would include not getting paid for missed meal breaks.  The compliance officer's duties included ensuring that Levering was in compliance with applicable rules and regulations.

Reliant Care also had a traveling management team that consisted of the Reliant Care's Executive Vice President and Chief Controlling Officer, who was a licensed nursing home administrator, as well as registered nurses, licensed nurses, former administrators, former nurses, directors of nursing, administrators, and other Reliant Care employees, who visited Levering Center and other facilities to help the facilities "in whatever they need[ed]."  (ECF No. 75 at 27, ¶ 13).  A Reliant Care facility nurse advisor, who was a member of Reliant Care's management team, also worked at Levering Center.  She provided training to care coordinators and unit managers and also assisted when there were staffing shortages by filling in and working on the floors, including working in supervisory positions.

Reliant Care did not schedule hours for employees working at Levering Center, although it did create daily hours reports to ensure the nursing department at Levering Center was staying within budget.  Levering's Staffing Coordinator and/or Director of Nursing set the schedules and work assignments for Nursing Department Employees, and Levering's Director of Nursing was responsible for directing and supervising their work.  Reliant Care did write the disciplinary policy that applied to all Levering employees, although Reliant Care was not involved in evaluating or appraising performance or recommending or implementing discipline for employees at Levering Center.

While it is disputed, there is evidence that salaries for Nursing Department Employees were set by Reliant Care.  Reliant Care also determined benefits for all employees at Levering Center.  Although Levering personnel were involved in the process of paying bonuses to employees, the overtime payment on bonuses policy required, without exception, that discretionary bonuses be approved in writing in advance by the Executive Director, Human Resources at Reliant Care.

Reliant Care oversaw a HR information system that was used to gather payroll and benefits information about employees working at Levering Center.  Reliant Care also processed Levering's payroll and it enrolled employees in benefits plans.  It stored and maintained Levering's payroll and benefits records either at Reliant Care's office or off-site.

11

## IV.    Discussion

In their joint Motion for Summary Judgment, Defendants argue that Plaintiff is limited to a two-year statute of limitations because, to extent Defendants violated the FLSA, there is insufficient evidence to support a finding that any such violation was willful.  Reliant Care separately moves for the entry of summary judgment in its favor and argues that the undisputed evidence in this case establishes that it is not an employer within the meaning of the FLSA.  The Court will first address Defendants' statute of limitations argument.

### A. There is Evidence of a Willful FLSA Violation

Under the FLSA, claims for violations must be brought within two (2) years after the cause of action accrued, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  An employer's violation of the FLSA is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute" *McLaughlin v. Richland Shoe Co.* 486 U.S. 128, 133 (1988).  "A finding of willfulness requires behavior on the part of the employer that exceeds negligence; the employer must act knowingly or with reckless disregard of whether the contested conduct was prohibited." *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006).

Plaintiff claims Defendants failed to pay Nursing Department Employees for missed meal breaks.  On appeal, the Eighth Circuit wrote the following regarding meal breaks:

> Under the FLSA, an employee's mealtimes ordinarily do not constitute "work," so the time employees spend eating is generally non-compensable. *See Hertz [Woodbury Cnty., Iowa]*, 566 F.3d [775, ] 783 [(8th Cir. 2009)]. But a mealtime can constitute compensable work if the employee spends the time predominantly for the benefit of the employer, *see Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993), and the employer knew or should have known its employees performed such work, *Hertz*, 566 F.3d at 781. It does not matter whether the employer prohibited the work. *Id.; Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997) ("Even if [the employer] had prohibited [the employee's] overtime work ... [the employer] could not avoid liability under the FLSA because he had actual and constructive knowledge that [the employee] worked overtime."); *see also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). Nor does it matter whether an employee seeks compensation for her work. *See Stewart*, 121 F.3d at 407 (explaining that employees "cannot waive [their] entitlement to FLSA benefits") … All that matters is whether an employer knew or should have known of the employee's work: if either, the employer must compensate the employee. *See Rapp [v. Network of Cmty. Options, Inc]*., 3 F.4th [1084, ] 1087 (8th Cir. 2021); *Hertz*, 566 F.3d at 781.

*Micone*, 132 F.4th at 1079.  The issue before the Court, therefore, is whether there is evidence that Defendants willfully failed to pay employees who worked during meal breaks.  In other words, is there evidence showing Defendants knew or recklessly disregarded the fact that employees were not being paid for the time they worked during meal breaks.

As discussed *supra*, the Eighth Circuit held in its opinion that there was evidence in this case that Defendants knew or should have known that they were not paying Nursing Department Employees for time spent working during the automatically deducted meal breaks and, therefore, Defendants were not entitled to the entry of summary judgment for Plaintiff's claim under the FLSA. *Micone*, 132 F.4th at 1080.  Notably, the Eighth Circuit did not find that there was only evidence in the record that Defendants *should have known* that they were not paying employees for time spent working; it found that there was evidence that they *knew or should have known*.  The Eighth Circuit's holding was based on the fact that there is evidence in the record that Nursing Department Employees frequently worked through meal breaks, and supervisors were aware of it.  But despite missed meal breaks being a prevalent practice, about which supervisors were aware, Defendants continued to deduct meal breaks from Nursing Department Employees' pay, and during the two-year audit period, Defendants failed to produce a single Temporary Time Sheet by which an employee requested to be paid for a missed meal break. Further, viewing the evidence in a light most favorable to Plaintiff, there is evidence in the record that Defendants did not inform some employees, including supervisors, that there was a policy to request pay for missed meal breaks.  Finally, there was also evidence in the record that some employees believed Defendants discouraged employees from reporting missed meal breaks.

14

After review of the record, this Court finds that there is evidence from which a finder-of-fact could conclude that Defendants knew or showed reckless disregard for the fact that they were not paying Nursing Department Employees for work they performed during meal breaks. *McLaughlin*, 486 U.S. at 133. In other words, there is evidence from which a jury reasonably could find that Defendants willfully violated the FLSA. Defendants' joint Motion for Summary Judgment as to the issue of the applicable statute of limitations will be denied.[4] The Court now turns to Reliant Care's separate Motion for Summary Judgment.

## B. There is Evidence that Reliant Care was a Joint Employer

Plaintiff alleges Levering and Reliant Care are joint employers of the Nursing Department Employees at Levering Center, and that both Defendants are liable for violations under the FLSA. In its Motion for Summary Judgment, Reliant Care

---

[4]It is not clear from the record, but to the extent that Defendants are reviving their good faith argument and seeking summary judgment on their affirmative defense to liquidated damages, the motion is denied. An employer that violates the wage provisions of the FLSA may be liable for the unpaid compensation and "an additional equal amount as liquidated damages." *See* 29 U.S.C. § 216(b); *Hultgren v. Cnty. of Lancaster, Neb.*, 913 F.2d 498, 509 (8th Cir. 1990). These liquidated damages are mandatory, "unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 957 (8th Cir. 1999) (citing 29 U.S.C. § 260). But if there is evidence the employer willfully violated the FLSA, this necessarily precludes the entry of summary judgment on the issue of liquidated damages because, as the Eighth Circuit has stated, "a [district court's] finding of willingness—which requires knowledge or recklessness—shows a fortiori that it did not think [the defendant] acted with reasonable grounds for believing that its conduct was lawful." *Brown v. Fred's, Inc.*, 494 F.3d 736, 743–44 (8th Cir. 2007). Defendants are not entitled to the entry of summary judgment on their affirmative defense to liquidated damages.

argues that the undisputed evidence establishes that it is not a joint employer and, therefore, it is entitled to the entry of summary judgment as to all claims against it.

The FLSA defines an "employer" broadly as including "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"[5] 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer", and "employ" means "to suffer or permit to work." 29 U.S.C. § 203(e)(1) and (g). The terms are broadly defined to achieve the remedial purposes of the FLSA. *United States v. Rosenwasser*, 323 U.S. 360, 362–63 (1945).

An employee may have more than one employer that are concurrently liable under the FLSA. *See, e.g., Falk v. Brennan*, 414 U.S. 190, 195 (1973) (finding the owner and the management company were joint employers under the FLSA). In determining whether an entity is a joint employer, courts are to look at the economic realities of the relationship between the employee and purported employer, as opposed to concepts of agency. *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005). *See also Goldberg v. Whitaker House Co*-op., Inc., 366 U.S. 28, 33 (1961) (explaining that "'economic reality' rather than 'technical concepts' is [ ] the test of employment" under the FLSA).

---

[5] Under the statute, "'person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).

The Eighth Circuit has not articulated a test for determining whether an entity is a joint employer, but courts in the Eighth Circuit have considered the following four factors: (1) whether the entity had the power to hire and fire employees, (2) whether it supervised and controlled employee work schedules or conditions of employment, (3) whether it determined the rate and method of payment, and (4) whether it maintained the employees' employment records. *Childress v. Ozark Delivery of Missouri L.L.C.*, 95 F. Supp. 3d 1130, 1139 (W.D. Mo. 2015). "These factors are not exhaustive and no one factor is dispositive." *Id.* "Although courts apply different and varying factors in applying the economic realities analysis, the overarching concern is whether the alleged employer possessed direct or indirect power to control significant aspects of the plaintiff's employment." *Id.*

Turning to the first factor, the only employee at Levering Center over whom Reliant Care had hiring authority was the Administrator. Reliant Care helped recruit Nursing Department Employees by placing links to job openings on its website, but Levering's Administrator, Director of Nursing, and Human Resources Manager had the authority to hire Nursing Department Employees. There is also evidence that Reliant Care did not fire Nursing Department Employees, and the authority to fire rested with Levering's Administrator, Director of Nursing, and Human Resources Manager. That said, Reliant Care did write the disciplinary policy that applied to

17

Nursing Department Employees at Levering Center and upon which disciplinary action could be based.

Regarding the second factor, supervision and control of work schedules or conditions of employment, Reliant Care asserts that it was not involved in the day-to-day operations at Levering Center, and that it did not supervise nursing department employees, control their conditions of employment, or determine their schedules.  The Court agrees that there is little to no evidence in the record that Reliant Care supervised nursing department employees on a day-to-day basis – it is undisputed that Levering's Staffing Coordinator or Director of Nursing set the schedules and work assignments, and the Director of Nursing was responsible for directing and supervising the working of the nursing department – but there is evidence that Reliant Care did exercise some control over nursing department employees' schedules and the conditions of their employment.  For example, Reliant Care monitored the number of hours employees were scheduled to work at Levering Center.  Further, a facility nurse advisor, who was a member of Reliant Care's management team, was embedded at Levering Center, and she provided training to care coordinators and unit managers.  She also assisted when there were staffing shortages, such as filling in and working as a unit manager or care coordinator, which were supervisory positions.

Reliant Care also set and developed policies that impacted Nursing Department Employees' conditions of employment.   Most significantly, it is undisputed that Reliant Care created the meal break policy at issue in this case. There is also evidence that it provided management at Levering Center with training on the meal break policy, and that Reliant Care was involved with the enforcement of the policy.  For example, employees at Levering Center were directed to contact Reliant Care's Human Resource Executive Director if they had questions or concerns about the meal break policy, and Reliant Care established and monitored a compliance hotline through which employees could lodge complaints about missed meal breaks.

Turning to the third factor, there is evidence in the record that Reliant Care set salaries and determined benefits for Nursing Department Employees at Levering Center.  Levering Center's Administrator testified that management at Reliant Care set the salary rates for Nursing Department Employees, and it was involved in the decision to increase wages by $3.00 an hour during the COVID-19 pandemic.[6]  In

---

[6]In its reply, Reliant Care counters that under the terms of the management services agreement between Reliant Care and Levering, Reliant Care can only recommend wages and salaries for employees.  While the terms of the formal agreement between Reliant Care and Levering may be relevant, they are not determinative.  Under controlling law, the Court is directed to examine the reality of the relationship between Reliant Care and the Nursing Department Employees at Levering Center. *Goldberg*, 366 U.S. at 33; *Ash*, 799 F.3d at 961; *Blair*, 420 F.3d at 829.  Despite what is set forth in the agreement, Plaintiff presented evidence that in practice Reliant Care set the salaries for Nursing Department Employees.  The Court accepts this fact as established for the purpose of deciding Reliant Care's Motion for Summary Judgment.

addition, Reliant Care was also involved in the payment of bonuses.  At least some of the discretionary bonuses for Nursing Department Employees had to be approved by the Executive Director of Human Resources at Reliant Care.  Reliant Care also developed and enrolled Nursing Department Employees in benefits plans.

Finally, as to the fourth factor, there is evidence that Reliant Care maintained at least some employment records for Nursing Department Employees.  Reliant Care's financial services division processed Levering's payroll, and there is evidence that Reliant Care maintained the payroll records for Nursing Department Employees.  There is also evidence that Reliant Care maintained their benefits records.

The facts of the present case are very similar, if not identical, to those in *Childress v. Ozark Delivery of Missouri, LLC*, where the district court found that a company that provided "certain off-site human resources" was a joint employer with the primary employer, a delivery services company.  95 F.Supp.3d at 1146.  Like here, the court in *Childress* acknowledged that the primary employer controlled the employees' schedules and day-to-day activities and evaluated their performance, but the fact that the HR contractor had established a number of policies and procedures, including the workplace handbook, weighed in favor of finding joint employment. *Id.* at 1145.  Also, like here, the HR contractor had limited authority to hire or fire employees – those decisions were made by the primary employer – but it had created

policies that permitted termination of employees for certain infractions. *Id.* The HR contractor also handled the employees' benefits and payroll, although unlike here, the HR contractor did not set salaries rates of pay. *Id.* Importantly, in *Childress*, like here, the HR contractor was involved with compensation policies, and it advised and ensured compliance with wage and hour regulations. In short, the the facts of *Childress* are nearly identical to the facts of this case.

Reliant Care argues that *Childress* is factually distinguishable and not persuasive authority because, unlike here, the primary employer and HR contractor had an agreement in which the two entities recognized that they were joint employers.[7] Defendants' argument does not win the day. In *Childress,* the agreement was but one factor that the court considered, because, as it noted, "[u]nder the economic realities analysis, employer status is not fixed by the labels that the parties attach to their relationship." *Childress*, 95 F. Supp. 3d at 1143. In fact, when deciding the issue of joint employment, the United State Supreme Court has ignored

---

[7]Although it is not fully developed, Reliant Care also appears to be making an argument that Plaintiff has conceded that it is not a joint employer. In its Memorandum in Support of its Motion for Summary Judgment, Reliant Care points to the fact that Plaintiff's corporate designee and investigator, Anne Thomas, testified in her Rule 30(b)(6) deposition that she did not consider Reliant Care and Levering to be joint employers, and she did not investigate whether they were. Plaintiff responds that the question posed to Ms. Thomas was outside the scope of deposition notice and an objection was made; therefore, Ms. Thomas's testimony on the matter was made in her individual capacity and is not binding on Plaintiff. Plaintiff further argues that, in any event, whether an entity is an "employer" under the FLSA is a legal question. The Court agrees with Plaintiff. *Childress*, 95 F. Supp. 3d at 1144. Ms. Thomas's opinion is not controlling on the issue of whether Reliant Care was an employer within the meaning of the FLSA.

the existence of an agreement designating one entity as employer, and it focused instead on the reality of the relationship between the purported employer and employees and the degree of control the purported employer exercised over the employees' terms and conditions of employment. *Falk*, 414 U.S. at 195 (finding building owner and management company were joint employers of maintenance workers, despite the fact that there were contracts between the two companies designating the workers as employees of the building owners). The facts in *Childress* are nearly indistinguishable from the facts here, and arguably, the case for finding joint employment is even stronger, because Plaintiff has presented evidence that Reliant Care set salaries for Nursing Department Employees.

The Court believes that the district court's analysis in *Childress* is sound, and its reasoning is persuasive. Following *Childress*, the Court finds there is evidence in this case from which a reasonable jury could conclude that Reliant Care was a joint employer of the Nursing Department Employees at Levering Center. More specifically, there is evidence, *inter alia*, that Reliant Care created the meal break policy at issue; it oversaw Levering's compliance with wage and hour laws; it set salaries, approved bonuses, and determined employees' benefits; it processed payroll and maintained payroll and benefits records; and it provided training and established workplace policies, including policies that could subject employees to discipline. In short, Plaintiff has met its burden of demonstrating that there is

22

evidence that Reliant Care exercised sufficient control over the Nursing Department Employees such that it was a joint employer.  Reliant Care's Motion for Summary Judgment is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Judgment in this case, which is dated October 13, 2023, is **VACATED.**  [ECF No. 84]

**IT IS FURTHER ORDERED** that Defendant Reliant Care Management Company, L.L.C.'s Motion for Summary Judgment is **DENIED.**  [ECF No. 54]

**IT IS FURTHER ORDERED** that Defendants Levering Regional Health Care Center, L.LC. and Reliant Care Management Company, L.L.C.'s Joint Motion for Summary Judgment is **DENIED**.  [ECF No. 58]

Dated this 25th day of August, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE